## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DURACELL U.S. OPERATIONS, INC., a Delaware corporation; | ) ) ) Case No:1:17-cv-07354 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHICAGO IMPORT, INC., an Illinois corporation, CENTRAL SUPPLY, INC., a New York corporation, CVS SALES CORP., a New York corporation, ELEGANT TRADING, INC., a Texas corporation, HUARAZ CORP., a New York corporation, PRICE MASTER CORPORATION, a New York corporation, YASIR CORP., an Illinois corporation, and ZALMEN REISS AND ASSOCIATES INC., a New York corporation; | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff Duracell U.S. Operations, Inc. ("Plaintiff" or "Duracell") alleges as follows:

## NATURE OF THE ACTION

1.     This is a Complaint for damages and injunctive relief arising from the misappropriation of Duracell's trademarks by Defendant Chicago Import, Inc. ("Chicago Import"), Defendant Central Supply Inc. ("Central Supply"), Defendant CVS Sales Group ("CVS"), Defendant Elegant Trading, Inc. ("Elegant Trading"), Defendant Huaraz Corp. ("Huaraz Corp."), Defendant Price Master Corporation ("Price Master"), Yasir Corp. d/b/a Yahya Trading Corp. ("Yahya Trading"), and Defendant Zalmen Reiss and Associates, Inc. ("Zalmen Reiss") (collectively, "Defendants") in connection with Defendants' unlawful and unauthorized advertisement, promotion, and sales of Duracell products.

2.       Duracell manufactures and distributes multiple types of alkaline batteries (such as AAA, AA, C, D, and 9V).  Among these are batteries sold to United States retail consumers ("U.S. Retail Batteries") that feature various material consumer benefits, including a guarantee and warranty. U.S. Retail Batteries also have distinct packaging that provides important information about the guarantee and warranty, warning labels, contact information for Duracell's United States customer service department, and that is designed to ensure batteries will be safely shipped to retail consumers without damage.

3.       Duracell also manufactures batteries that are sold only to Original Equipment Manufacturers ("OEMs") ("OEM Batteries").   OEMs use the batteries as accessories accompanying or installed in electronic products that they manufacture.  OEM Batteries, which are labeled with the words "Original Equipment Accessory" and/or "Not For Retail Sale," do not have the guarantee and warranty that accompany U.S. Retail Batteries and also lack the informational and protective packaging used for U.S. Retail Batteries.  Accordingly, OEM Batteries are materially different from U.S. Retail Batteries.

4.       Duracell also separately manufactures batteries that are sold only to retail consumers in other countries ("Foreign Retail Batteries").  These batteries, like OEM Batteries, do not have the guarantee and warranty that accompany U.S. Retail Batteries, and any warranties or guarantees that accompany Foreign Retail Batteries when sold in foreign markets are inapplicable when Foreign Retail Batteries are sold in the United States.  Foreign Retail Batteries are also sold in packaging that uses Duracell's foreign trademarks (often including a depiction of a pink bunny (the "Duracell Bunny") or a brown bear (the "Duracell Bear")).  The Foreign Retail Batteries' packaging contains foreign language text not used in Duracell's United States packaging and lists contact information for foreign customer service call centers rather than

United States call centers. Accordingly, Foreign Retail Batteries are also materially different from U.S. Retail Batteries.

5.      The Defendants are engaged in a deceptive scheme in which they offer OEM Batteries and/or Foreign Retail Batteries for sale alongside U.S. Retail Batteries and lead United States consumers to falsely believe that all Duracell batteries purchased from the Defendants come with all of the benefits that accompany U.S. Retail Batteries.  As part of this scheme, some of the Defendants are also selling and shipping Duracell batteries in counterfeit packaging that has not been manufactured by or on behalf of Duracell.  As a result of the Defendants' actions, United States consumers are likely to be confused and disappointed when they discover that the products they have purchased do not have the benefits they have come to expect from the Duracell brand.

6.      Based on the Defendants' unlawful actions, Duracell asserts claims for trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114; false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement and unfair competition; and violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

## PARTIES

7.      Duracell U.S. Operations, Inc. is a Delaware corporation with its principal place of business located at 14 Research Drive, Bethel, Connecticut  06801.

8.      Chicago Import is an Illinois corporation with its principal place of business located at 3801 W. Lawrence Avenue, Chicago, Illinois 60625.

9.     Central Supply is a New York corporation with its principal place of business located at 4724 18th Ave., Brooklyn, New York 11204.

10.     CVS is a New York corporation with its principal place of business located at 5807 13th Avenue, Brooklyn, New York 11219.

11.     Elegant Trading is a Texas corporation with its principal place of business located at 106 Addison Place, Sugar Land, Texas 77479.

12.     Huaraz Corp. is a New York corporation that, on information and belief, has its principal place of business located at 23 Tony Drive, Kings Park, New York 11754.

13.     Price Master is a New York corporation with its principal place of business located at 57-07 31st Ave., Woodside, New York 11377.

14.     Yahya Trading is an Illinois corporation with its principal place of business located at 4954 N. Elston Ave., Chicago, Illinois 60630.

15.     Zalmen Reiss is a New York corporation with its principal place of business located at 171 47th Street, Brooklyn, New York 11232.

## JURISDICTION

16.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  Duracell's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the State of Illinois are substantially related to its federal claims such that they form part of the same case or controversy.

17.     This Court has personal jurisdiction over Chicago Import because its principal place of business is located in Illinois, it transacts business in Illinois, and this action arises out of its conduct in Illinois.

18.     This Court has personal jurisdiction over Central Supply because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

19.     This Court has personal jurisdiction over CVS because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

20.     This Court has personal jurisdiction over Elegant Trading because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

21.     This Court has personal jurisdiction over Huaraz Corp. because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

22.     This Court has personal jurisdiction over Price Master because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

23.     This Court has personal jurisdiction over Yahya Trading because its principal place of business is located in Illinois, it transacts business in Illinois, and this action arises out of its conduct in Illinois

24. This Court has personal jurisdiction over Zalmen Reiss because it purposefully availed itself of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and selling infringing products to consumers and other purchasers within Illinois.

**VENUE**

25. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred within this judicial district.

**FACTS**
**The Duracell® Trademarks**

26. Duracell, one of the world's largest producers of batteries for consumer electronics products, is the owner of numerous registered Duracell® trademarks. For more than 50 years, Duracell has sold batteries to consumers marked with its famous DURACELL name and a copper-and-black color scheme that are covered by "incontestable" United States trademark registrations (collectively, as described in ¶¶ 27-32 below, the "Duracell® Marks").

27. Duracell U.S. Operations, Inc. ("Duracell U.S.") owns the federal trademark registration for the DURACELL word mark in International Classes 007, 009, 011, 012, and 015, as well as U.S. Class 021, which was issued by the USPTO on or about July 27, 1965 (U.S. Trademark Registration No. 793,273) and is attached hereto as Exhibit A. This mark was first used in commerce on or around May 14, 1964.

28. Duracell U.S. also owns the federal trademark registration for the highly distinctive and well-known "coppertop" design of the Duracell® battery. Duracell U.S. owns this design mark in International Class 009 and U.S. Class 021, which was issued by the USPTO

on or about May 18, 1976 (U.S. Trademark Registration No. 1,039,589) and is attached hereto as Exhibit B. This mark was first used in commerce on or around September 1973.

29.     Duracell U.S. also owns the federal trademark registration for the highly distinctive and well-known "coppertop" design of the Duracell® battery. Duracell U.S. owns this design mark in International Class 009 and U.S. Class 021, which was issued by the USPTO on or about December 30, 1980 (U.S. Trademark Registration No. 1,144,787) and is attached hereto as Exhibit C. This mark was first used in commerce on or around September 1973.

30.     Duracell U.S. also owns the federal trademark registration for the highly distinctive and well-known "coppertop" design of the Duracell® battery. Duracell U.S. owns this design mark in International Class 009 and U.S. Class 021, which was issued by the USPTO on or about May 5, 1981 (U.S. Trademark Registration No. 1,152,937) and is attached hereto as Exhibit D. This mark was first used in commerce on or around September 1973.

31.     Duracell U.S. also owns the federal trademark registration for the DURACELL word mark in International Class 009 and U.S. Classes 021, 023, 026, 036, and 038, which was issued by the USPTO on or about April 18, 2006 (U.S. Trademark Registration No. 3,082,777) and is attached hereto as Exhibit E. This mark was first used in commerce on or around February 15, 2004.

32.     Duracell U.S. also owns the federal trademark registration for the DURACELL word mark in International Class 009 and U.S. Classes 021, 023, 026, 036, and 038, which was issued by the USPTO on or about September 19, 2006 (U.S. Trademark Registration No. 3,144,722) and is attached hereto as Exhibit F. This mark was first used in commerce on or around May 14, 1964.

33.     These Duracell® Marks have long held "incontestable" status and serve as conclusive evidence that purchasers rely on the registered Duracell word marks and copper-and-black color scheme as a way to identify the source of a battery product.

34.     Duracell actively uses and markets all of the Duracell® Marks in commerce.

35.     Due to the quality of Duracell's products, and because Duracell is recognized as the source of high quality products, the Duracell® Marks have significant value.

### Duracell's Products

36.     Duracell is engaged in the manufacture, marketing, licensing, sale, and distribution of batteries worldwide.

37.     Duracell manufactures alkaline batteries in many common sizes, such as AAA, AA, C, D, and 9V.

38.     Duracell distributes U.S. Retail Batteries to authorized distributors and retailers that in turn resell U.S. Retail Batteries to United States consumers.  Duracell also sells U.S. Retail Batteries directly to United States consumers.  Duracell's AA, AAA, C and D size U.S. Retail Batteries are manufactured in Duracell's manufacturing facility in the United States.

39.     Duracell separately distributes Foreign Retail Batteries to authorized distributors and retailers that sell the Foreign Retail Batteries to consumers in other countries.  Duracell also sells Foreign Retail Batteries directly to consumers in other countries.  Foreign Retail Batteries are manufactured at a number of Duracell's foreign manufacturing plants.

40.     Duracell also distributes OEM Batteries through the Duracell OEM Program. Under the Duracell OEM Program, OEMs purchase OEM Batteries from Duracell for the sole purpose of inserting them into packaging or products manufactured by the OEMs.

41. The majority of Duracell's OEM Batteries are manufactured outside the United States, with a substantial percentage of OEM Batteries manufactured in Duracell's manufacturing facility in China. These batteries are clearly labeled with the words "Original Equipment Accessory" and/or "Not For Retail Sale," and are sold by Duracell only to OEMs. OEM Batteries are not authorized to be imported for purposes of direct consumer sales or sold directly to consumers in the United States and, therefore, do not have the same features and benefits as U.S. Retail Batteries.

**OEM Batteries and U.S. Retail Batteries Are Materially Different Products**

42. If a customer were to purchase an OEM Battery under the mistaken belief that it was a U.S. Retail Battery with all of the benefits that accompany those products, that customer would have purchased a materially different product for several reasons, including, but not limited to, the reasons enumerated below.

43. First, U.S. Retail Batteries come with Duracell's Battery Guarantee, which provides that Duracell will repair or replace any device that is damaged because of a defect in a U.S. Retail Battery that was placed in the device. Duracell's Battery Guarantee, however, does not apply to OEM Batteries.

44. U.S. Retail Batteries also come with Duracell's standard ten-year retail consumer warranty, but this warranty does not apply to OEM Batteries.

45. Duracell places great importance on its retail customers receiving the best possible product experience and being fully apprised of the guarantees and/or warranties covering the batteries they purchase. To this end, Duracell carefully designs and controls the packaging and labeling of U.S. Retail Batteries. This packaging provides information in the English language about Duracell's Battery Guarantee, Duracell's standard ten-year retail

consumer warranty, contact information for Duracell's United States customer service department, and label warnings. The packaging for U.S. Retail Batteries is also carefully designed, evaluated, and controlled to ensure that batteries will be safely shipped to retail consumers.

46.     OEM Batteries, however, are not packaged in this manner.

**Foreign Retail Batteries and U.S. Retail Batteries Are Materially Different Products**

47.     Like OEM Batteries, Foreign Retail Batteries are also materially different products from U.S. Retail Batteries for several reasons.

48.     First, Duracell's Battery Guarantee that applies to U.S. Retail Batteries does not apply to Foreign Retail Batteries sold in the United States. Similarly, any guarantees that may accompany Foreign Retail Batteries do not apply if those batteries are sold in the United States.

49.     Second, Duracell's standard ten-year retail consumer warranty also does not apply to Foreign Retail Batteries sold in the United States. Similarly, any warranties that accompany Foreign Retail Batteries do not apply if those batteries are sold in the United States.

50.     Third, the packaging for Foreign Retail Batteries, unlike the packaging for U.S. Retail Batteries, does not provide information about the guarantee and warranty that come with U.S. Retail Batteries. The packaging also contains foreign language text not used in Duracell's United States packaging and lists contact information for foreign customer service call centers rather than United States call centers, which are not intended for United States consumers.

51.     The packaging for Foreign Retail Batteries also makes advertising claims (*e.g.*, "Up to 6X Longer Lasting Power") that are intended for countries that have a significant percentage of zinc carbon batteries in their consumer battery markets, which is not the case in the United States. Duracell does not use these advertising claims in the United States.

-10-

52.     Additionally, many of Duracell's Foreign Retail Batteries are marketed and sold in packaging that bears an image of the Duracell Bunny or Duracell Bear in addition to the Duracell® Marks.  Duracell does not use the Duracell Bunny or Duracell Bear on product packaging in the United States, but Duracell does use the Duracell Bunny on packaging in many territories outside of the United States.

### Chicago Import's Unlawful Conduct

53.     As of October 11, 2018, Chicago Import was offering Foreign Retail Batteries for sale within the United States, as depicted in the images below.  These images were taken from Chicago Import's website, http://www.chicagoimportinc.net/batteries.html.

 

 

 

54.     As shown in these images, Chicago Import offered for sale multiple different types and sizes of Foreign Retail Batteries for sale from its location within the United States. The packaging for these products is different from Duracell's U.S. Retail Batteries, as it contains foreign language text not used in Duracell's United States packaging, advertising claims not intended for the United States market, and non-United States customer service contact information.  The packaging also depicts the Duracell Bunny that Duracell does not use on its packaging for U.S. Retail Batteries.

55.     Duracell confirmed that Chicago Import is indeed selling Foreign Retail Batteries by making a purchase of AA, AAA, C, D, and 9V batteries directly from Chicago Import. Photographs of some of the Foreign Retail Batteries purchased from Chicago Import are shown below:









56.     The infringing products sold by Defendant Chicago Import include Duracell®-branded batteries packaged in blister packs, meaning that a consumer can see the battery, including the Duracell® name and the distinctive "coppertop" battery design.  Due to the wide consumer recognition of the Duracell® name and the "coppertop" design, United States consumers are being misled into believing that the Foreign Retail Batteries being sold by Chicago Import are U.S. Retail Batteries.  In reality, consumers are purchasing Foreign Retail Batteries that (1) contain non-United States advertising claims and images of the Duracell Bunny that Duracell does not use in the United States, (2) lack Duracell's Battery Guarantee or standard ten-year retail consumer warranty, and (3) are being sold in packaging that omits the customer safety and customer service information consumers expect from Duracell's U.S. Retail Batteries.

57.     Duracell also purchased from Chicago Import products in counterfeit packaging. Among the products Duracell purchased from Chicago Import were 9V batteries that initially appeared to be U.S. Retail Batteries, as shown below:



58.     Upon further inspection, however, Duracell discovered that the packaging for these 9V batteries (including the cardboard "card" to which the battery is affixed and the inner cardboard container holding 12 cards) is an unauthorized counterfeit reproduction of Duracell's United States' packaging and was neither manufactured by nor authorized to be manufactured on behalf of Duracell.   This counterfeit packaging contains unauthorized reproductions of the Duracell® Marks and is plainly misleading to consumers because it attempts to pass itself off as genuine Duracell packaging—when it is not.

**Zalmen Reiss's Unlawful Conduct**

59.     On information and belief, some time prior to July 5, 2017, Zalmen Reiss created a seller account on www.groupon.com (Groupon) with the name "DIGITAL ETC," through which Zalmen Reiss duped online customers into believing they were purchasing U.S. Retail Batteries.   In actuality, customers were being sold OEM Batteries rather than U.S. Retail Batteries.

60.     In its online sales listings on Groupon, Zalmen Reiss claims to offer for sale "New Duracell Batteries AAA/AA (48-Pack BATTEIRES)" [sic] "DURACELL C Battery (48-Pack BATTEIRES)" [sic], "Duracell Batteries AA (48-Pack BATTEIRES)" [sic], "Duracell Batteries AAA/AA (48-Pack BATTEIRES)" [sic], and tout Duracell's "iconic copper-and-black design."  The sales listings also go so far as to discuss the history of Duracell's founder and the creation of the Duracell brand, giving the impression that the batteries offered for sale are U.S. Retail Batteries and that Zalmen Reiss is associated or affiliated with Duracell.  Zalmen Reiss, however, is selling unlawfully diverted OEM Batteries rather than U.S. Retail Batteries and is in no way affiliated with Duracell.  Accordingly, this advertising is misleading to consumers.  A screenshot of one such sales listing is presented below:



61.     Prior to July 5, 2017, Zalmen Reiss's sales listings on Groupon also contained images of Duracell's well-known "coppertop" design, further reflecting Zalmen Reiss's intentions of misleading consumers to believe the sales listings were for U.S. Retail Batteries. These images were removed only after Duracell contacted Groupon.

62.     Zalmen Reiss is also selling its falsely advertised "New Duracell Batteries" in counterfeit packaging that was not authorized or created by Duracell.  Zalmen Reiss's  packaging provides no information about Duracell's guarantees, warranties, or contact information for

Duracell's customer service department, all of which retail consumers have unquestionably come to expect from the Duracell brand.

63.     On July 18, 2017, Duracell sent a cease and desist letter to Zalmen Reiss at 171 47th Street, Brooklyn, NY 11232.  In the letter Duracell demanded that Defendant Zalmen Reiss cease and desist selling OEM Batteries.  Despite several subsequent communications, Defendant Zalmen Reiss has been unwilling to permanently halt its sales of OEM Batteries.

64.     Upon information and belief, Zalmen Reiss has also sold OEM Batteries, Foreign Retail Batteries, and Duracell batteries in counterfeit packaging to other entities, including but not limited to Chicago Import, that resell the products to U.S. consumers.

**Price Master's Unlawful Conduct**

65.     On information and belief, some time prior to January 2017, Price Master began selling OEM Batteries, Foreign Retail Batteries, and Duracell products in counterfeit packaging through Price Master's New York location at 57-07 31st Ave., Woodside, New York 11377 and through Price Master's website, www.pricemaster.com.

66.     In January 2017, Duracell purchased Duracell batteries from Price Master.  While these batteries at first appeared to be genuine U.S. Retail Batteries, Duracell soon discovered that they were in fact packaged in counterfeit packaging that was neither manufactured by nor on behalf of Duracell.  As such, the packaging for these batteries did not adhere to the controls Duracell uses for its genuine packing to ensure that batteries will be safely shipped to retail consumers.

67.     Through investigation in or around September 2017, Duracell discovered that OEM Batteries were being sold to United States consumers over the Internet by RBLY

International, LLC ("RBLY"). After Duracell informed RBLY that it was illegally selling OEM batteries, RBLY notified Duracell that it had purchased the OEM Batteries from Price Master.

68.     Through a similar investigation in or around September 2017, Duracell discovered that Foreign Retail Batteries were being sold in the United States by Nalcor, LLC d/b/a Nalpac ("Nalcor"). After Duracell informed Nalcor that it was illegally selling Foreign Retail Batteries, Nalcor notified Duracell that it had purchased the Foreign Retail Batteries from Price Master. Images of the Foreign Retail Batteries sold in the U.S. by Price Master are set forth below:







69.     Additionally, as of October 18, 2017, Price Master offered for sale on its website Duracell batteries that have been repackaged in non-Duracell packaging which lacks the customer information and safety and quality measures present in genuine Duracell packaging. Below is an image of these repackaged Duracell batteries offered for sale on Price Master's website.     This image was taken from the URL https://www.pricemaster.com//AA-2-REPACKCARDED-BIG-CARD?path= on October 18, 2017:



70.     As shown in the image above, Price Master is offering Duracell batteries for sale in packaging that does not follow Duracell's controls to ensure that batteries will be safely shipped to retail consumers, yet is designed to give the false impression that it is official Duracell packaging.  Moreover, this packaging lacks information on the Battery Guarantee, Duracell's standard ten-year retail consumer warranty, safety guidelines, and Duracell's United States customer service contact information, all of which are present on Duracell's genuine U.S. Retail Battery packaging.

71.     On September 29, 2017, Duracell sent a cease-and-desist letter demanding that Price Master cease selling OEM Batteries, Foreign Retail Batteries, and Duracell batteries in

counterfeit packaging. On October 6, 2017, Price Master mailed a response in which it refused to cease selling these products.

72.     Upon information and belief, Price Master has also sold OEM Batteries, Foreign Retail Batteries, and Duracell batteries in counterfeit packaging to other entities, including but not limited to Chicago Import, that resell the products to U.S. consumers.

## Central Supply's Unlawful Conduct

73.     Upon information and belief, Central Supply has sold Foreign Retail Batteries and Duracell batteries in counterfeit packaging to U.S. consumers and other entities, including, but not limited to, Chicago Import.

74.     Chicago Import identified Central Supply as a supplier of these batteries in its Third Party Complaint.

## CVS's Unlawful Conduct

75.     Upon information and belief, CVS has sold Foreign Retail Batteries and Duracell batteries in counterfeit packaging to U.S. consumers and other entities, including, but not limited to, Chicago Import.

76.     Chicago Import identified CVS as a supplier of these batteries in its Third Party Complaint.

## Elegant Trading's Unlawful Conduct

77.     Upon information and belief, Elegant Trading has sold Foreign Retail Batteries and Duracell batteries in counterfeit packaging to U.S. consumers and other entities, including, but not limited to, Chicago Import.

78.     Chicago Import identified Elegant Trading as a supplier of these batteries in its Third Party Complaint.

**Huaraz Corp.'s Unlawful Conduct**

79.     Upon information and belief, Huaraz Corp. has sold Foreign Retail Batteries and Duracell batteries in counterfeit packaging to U.S. consumers and other entities, including, but not limited to, Chicago Import.

80.     Chicago Import identified Huaraz Corp. as a supplier of these batteries in its Third Party Complaint.

**Yahya Trading's Unlawful Conduct**

81.     Upon information and belief, Yahya Trading has sold Foreign Retail Batteries and Duracell batteries in counterfeit packaging to U.S. consumers and other entities, including, but not limited to, Chicago Import.

82.     Chicago Import identified Yahya Trading as a supplier of these batteries in its Third Party Complaint.

**Defendants' Illegal Sale Of Infringing Products**

83.     The Defendants, without authorization from Duracell, are unlawfully selling and offering for sale counterfeit packaged Duracell batteries, OEM Batteries, and/or Foreign Retail Batteries bearing the Duracell® Marks, including through Internet sites.

84.     The OEM Batteries sold by Zalmen Reiss and Price Master are materially different from U.S. Retail Batteries in a number of ways, including, but not limited to, the fact that they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, and they do not come in the safe and informational packaging used by Duracell for U.S. Retail Batteries.

85.     The Foreign Retail Batteries sold by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss are materially

different from U.S. Retail Batteries because they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, their packaging contains advertising claims and designs not applicable to the United States market, and their packaging contains foreign language text not used in Duracell's United States packaging, and the Foreign Retail Batteries' packaging lacks contact information for Duracell's United States customer service department.

86.     In addition to OEM Batteries and Foreign Retail Batteries, Defendants have also sold Duracell batteries in counterfeit reproductions of Duracell's United States' packaging. This counterfeit packaging contains unauthorized reproductions of the Duracell® Marks and is plainly misleading to consumers because it attempts to pass itself off as genuine Duracell packaging—when it is not.

87.     As a result, by their unauthorized use of the Duracell® Marks, Defendants have misled consumers into believing they are purchasing products with the same quality controls and customer benefits as U.S. Retail Batteries.   In reality, however, customers are receiving unauthorized and diverted OEM Batteries and Foreign Retail Batteries that are not intended for retail sale in the United States, and which lack many of the material benefits customers associate with U.S. Retail Batteries.  Customers are also receiving batteries in counterfeit packaging that may not safely protect the batteries during shipping and storage.

**Duracell Has Suffered Significant Harm**

88.     Duracell has suffered, and will continue to suffer, irreparable harm to the Duracell® Marks and its reputation and goodwill because of Defendants' actions.

89.     The Defendants' unauthorized actions have caused, and are likely to further cause, confusion, mistake, and deception of Duracell's consumers, customers, and potential

customers. Specifically, the Defendants' use of the Duracell® Marks is likely to lead Duracell's customers and potential customers to mistakenly conclude that Defendants' sale of OEM Batteries and Foreign Retail Batteries originates from, or is authorized and/or approved by Duracell, and conclude that the OEM Batteries and Foreign Retail Batteries sold by Defendants are U.S. Retail Batteries, none of which is true.

90.     Moreover, the Defendants' sale of batteries in counterfeit packaging is likely to cause consumer confusion because customers will be misled into believing that the packaging bearing the Duracell® Marks was created by or authorized by Duracell.  Additionally, because Defendants are selling batteries in counterfeit packaging, Duracell cannot ensure that the batteries contained therein will reach customers in a safe and undamaged manner.

91.     The Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

92.     Duracell is entitled to injunctive relief because Defendants will otherwise continue to infringe its trademarks and unlawfully pass off counterfeit packaging, OEM Batteries, and Foreign Retail Batteries as if they are genuine U.S. Retail Batteries.  The Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to the Duracell® Marks, to Duracell's reputation and goodwill, and to the business of Duracell and its distributors.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. § 1114**

93.     Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

95.     The Duracell® Marks are valid and subsisting trademarks in full force and effect.

96.     Defendants willfully and knowingly used, and continue to use, the Duracell® Marks in commerce for the purpose of advertising, promoting, and selling OEM Batteries and/or Foreign Retail Batteries to United States consumers without the consent of Duracell.

97.     Defendants' knowing and willful use of the Duracell® Marks in connection with their unauthorized and misleading advertising, promotion, and sale of OEM Batteries and/or Foreign Retail Batteries to United States consumers is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants are advertising and selling to United States consumers originate from, or are sponsored, authorized, or approved by Duracell to be sold to United States consumers, and because it suggests that the OEM Batteries and Foreign Retail Batteries sold by Defendants are the same as U.S. Retail Batteries.

98.     The OEM Batteries and Foreign Retail Batteries sold by Defendants Zalmen Reiss and Price Master are not, in fact, the same as U.S. Retail Batteries.  The OEM batteries sold by Zalmen Reiss and Price Master are materially different from U.S. Retail Batteries in a number of ways, including, but not limited to, the fact that they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, they do not come in the safe and informational packaging used by Duracell for U.S. Retail Batteries, and because they are labeled with the words "Original Equipment Accessory" and/or "Not for Retail Sale."

99.     Similarly, the Foreign Retail Batteries sold by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss are

materially different from U.S. Retail Batteries because they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, their packaging contains advertising claims not applicable to the United States market, their packaging contains images of the Duracell Bunny or Duracell Bear that Duracell does not use in the United States, their packaging contains foreign language text not used in Duracell's United States packaging, and their packaging lacks contact information for Duracell's United States customer service department.

100.    Defendants' unlawful actions and unauthorized use of the Duracell® Marks have materially damaged the value of the Duracell® Marks, caused significant damage to Duracell's business relations, and infringed on the Duracell® Marks.

101.    As a proximate result of Defendants' actions, Duracell has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

102.    Pursuant to 15 U.S.C. § 1116, Duracell is entitled to injunctive relief enjoining Defendants' infringing conduct.

103.    Pursuant to 15 U.S.C. § 1117(a), Duracell is entitled to enhanced damages and an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(B)

104.    Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

105.    Duracell is the owner of the Duracell® Marks.

106.     Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

107.     The Duracell® Marks are valid and subsisting trademarks in full force and effect.

108.     Defendants willfully and knowingly used, and continue to use, the Duracell® Marks in interstate commerce for purposes of advertising, promoting, and selling diverted OEM Batteries and/or diverted Foreign Retail Batteries to United States consumers without the consent of Duracell.

109.     Defendants' advertisements and promotions of their products unlawfully using the Duracell® Marks have been disseminated to the relevant purchasing public.

110.     The use of the Duracell® Marks by Zalmen Reiss and Price Master in connection with their unauthorized advertising, promotion, and sale of OEM Batteries to United States consumers misrepresents the nature, characteristics, qualities, and origin of the products.

111.     Likewise, the use of the Duracell® Marks by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss in connection with their unauthorized advertising, promotion, and sale of Foreign Retail Batteries to United States consumers misrepresents the nature, characteristics, qualities, and origin of the products.

112.     Defendants' use of the Duracell® Marks in connection with the unauthorized advertising, promotion, and sale of OEM Batteries and/or Foreign Retail Batteries to United States consumers is likely to cause confusion, cause mistake, or deceive because it suggests that the products sold by Defendants are U.S. Retail Batteries rather than OEM Batteries or Foreign Retail Batteries, and that the batteries sold by Defendants originate from, or are sponsored, authorized, or approved by Duracell to be sold to United States consumers.

113.    As a proximate result of Defendants' actions, Duracell has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

114.    Pursuant to 15 U.S.C. § 1116, Duracell is entitled to injunctive relief enjoining Defendants' infringing conduct.

115.    Pursuant to 15 U.S.C. § 1117(a), Duracell is entitled to enhanced damages and an award of attorneys' fees.

### THIRD CAUSE OF ACTION
**Unfair Competition And False Designation Of Origin**
**15 U.S.C. § 1125(a)(1)(A)**

116.    Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

117.    Duracell brings this claim against all of the Defendants.

118.    Duracell is the owner of the Duracell® Marks.

119.    Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

120.    The Duracell® Marks are valid and subsisting trademarks in full force and effect.

121.    Defendants have willfully and knowingly used the Duracell® Marks in interstate commerce for the purpose of selling unlawfully diverted OEM Batteries and/or Foreign Retail Batteries to United States consumers without the consent of Duracell.

122.    The use of the Duracell® Marks by Zalmen Reiss and Price Master in connection with their unauthorized and misleading advertising, promotion, and sale of OEM Batteries to United States consumers is likely to cause confusion, cause mistake, or deceive because it suggests that the products these Defendants advertised and sold to United States consumers

originate from, or are sponsored, authorized, or approved by Duracell to be sold to United States consumers – these representations are knowingly false.

123.    Likewise, the use of the Duracell® Marks by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss in connection with their unauthorized and misleading advertising, promotion, and sale of Foreign Retail Batteries to United States consumers is likely to cause confusion, cause mistake, or deceive because it suggests that the products these Defendants advertised and sold to United States consumers originate from, or are sponsored, authorized, or approved by Duracell to be sold to United States consumers – these representations are knowingly false.

124.    Defendants' unauthorized sale of products bearing the Duracell® Marks and their unauthorized use of the Duracell® Marks in advertising materially damages the value of the Duracell® Marks and causes significant damages to Duracell's business relations.

125.    Defendants' unauthorized sale of products bearing the Duracell® Marks and their unauthorized use of the Duracell® Marks in advertising infringes on the Duracell® Marks.

126.    As a proximate result of Defendants' actions, Duracell has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

127.    Pursuant to 15 U.S.C. § 1116, Duracell is entitled to injunctive relief enjoining Defendants' infringing conduct.

128.    Pursuant to 15 U.S.C. § 1117(a), Duracell is entitled to enhanced damages and an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

129.    Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

130.    Duracell is the owner of the Duracell® Marks.

131.    Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

132.    The Duracell® Marks are valid and subsisting trademarks in full force and effect.

133.    The Duracell® Marks are distinctive, famous, and widely recognized by the consuming public.

134.    Duracell is widely recognized as the designated source of goods bearing the Duracell® Marks.

135.    Defendants' use of the Duracell® Marks began after the Duracell® Marks had become famous.

136.    The willful use of the Duracell® Marks by Zalmen Reiss and Price Master in connection with their unauthorized and illegal advertising, promotion, and sale of OEM Batteries to consumers is diluting the Duracell® Marks because the products these Defendants are selling are not the same as U.S. Retail Batteries.

137.    The willful use of the Duracell® Marks by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss in connection with their unauthorized and illegal advertising, promotion, and sale of Foreign Retail Batteries to consumers is diluting the Duracell® Marks because the products these Defendants are selling are not the same as U.S. Retail Batteries.

138.    As a proximate result of Defendants' dilution of the Duracell® Marks, the reputation and goodwill associated with the Duracell® Marks has been, and continues to be, harmed, and Duracell has suffered, and continues to suffer, immediate and irreparable injury.

139.    Further, Duracell has suffered, and continues to suffer, damages, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

140.    Pursuant to 15 U.S.C. § 1116, Duracell is entitled to injunctive relief enjoining Defendants' infringing conduct.

141.    Pursuant to 15 U.S.C. § 1117(a), Duracell is entitled to enhanced damages and an award of attorneys' fees.

## FIFTH CAUSE OF ACTION
### Trademark Counterfeiting
### 15 U.S.C. § 1114

142.    Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

143.    Duracell is the owner of the Duracell® Marks.

144.    Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

145.    The Duracell® Marks are valid and subsisting trademarks in full force and effect.

146.    Defendants have used in commerce counterfeit reproductions of Duracell's battery packaging and the Duracell® Marks that are identical with, or substantially indistinguishable from, the Duracell® Marks on goods covered by Duracell's federal trademark registrations.

147.    Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

148.    Defendants' use of the Duracell® Marks to advertise, promote, offer for sale, distribute, and sell products packaged in counterfeit packaging and bearing counterfeit trademarks was at all times and is currently without Duracell's authorization, license, or consent.

149.    Defendants' unauthorized use of the Duracell® Marks on counterfeit packaging bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods on the Internet and at physical store locations constitutes use of the Duracell® Marks in commerce.

150.    Defendants' unauthorized use of the Duracell® Marks is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' goods and packaging are the same as authorized Duracell goods and packaging and/or that the products and packaging sold by Defendant are affiliated with, connected to, associated with, or in some way related to Duracell; (c) result in Defendants benefiting from Duracell's advertising and promotion; and (d) result in Defendants unfairly profiting from Duracell's reputation and trademarks all to the substantial and irreparable injury of the public, Duracell, the Duracell® Marks, and the substantial goodwill they represent.

151.    Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

152.    By reason of the foregoing, Defendants are liable to Duracell for: (a) statutory damages of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Duracell's election, an amount representing three (3) times Duracell's

-33-

damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment internet pursuant to 15 U.S.C. § 1117(b).

153.    Duracell is also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violation[s]" pursuant to 15 U.S.C. § 1116(d).

### SIXTH CAUSE OF ACTION
### Illinois Common Law Trademark Infringement And Unfair Competition

154.    Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

155.    This claim arises under the laws of the State of Illinois.

156.    Duracell is the owner of the Duracell® Marks.

157.    Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

158.    The Duracell® Marks are valid and subsisting trademarks in full force and effect.

159.    Defendants willfully and knowingly used, and continue to use, the Duracell® Marks in commerce for the purpose of advertising, promoting, and selling OEM Batteries and/or Foreign Retail Batteries to United States consumers without the consent of Duracell.

160.    Defendants' knowing and willful use of the Duracell® Marks in connection with their unauthorized and misleading advertising, promotion, and sale of OEM Batteries and/or Foreign Retail Batteries to United States consumers is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants are advertising and selling to United States consumers originate from, or are sponsored, authorized, or approved by Duracell to be

sold to United States consumers, and because it suggests that the OEM Batteries and Foreign Retail Batteries sold by Defendants are the same as U.S. Retail Batteries.

161.    The OEM Batteries and Foreign Retail Batteries sold by Defendants are not, in fact, the same as U.S. Retail Batteries.  The OEM batteries sold by Zalmen Reiss and Price Master are materially different from U.S. Retail Batteries in a number of ways, including, but not limited to, the fact that they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, they do not come in the safe and informational packaging used by Duracell for U.S. Retail Batteries, and because they are labeled with the words "Original Equipment Accessory" and/or "Not for Retail Sale."

162.    Similarly, the Foreign Retail Batteries sold by Chicago Import, Price Master, Central Supply, CVS, Elegant Trading, Huaraz Corp., Yahya Trading, and Zalmen Reiss are materially different from U.S. Retail Batteries because they do not have Duracell's Battery Guarantee, they do not have Duracell's standard ten-year retail consumer warranty, their packaging contains advertising claims not applicable to the United States market, their packaging contains images of the Duracell Bunny or Duracell Bear that Duracell does not use in the United States, their packaging contains foreign language text not used in Duracell's United States packaging, and their packaging lacks contact information for Duracell's United States customer service department.

163.    Defendants' unlawful actions and unauthorized use of the Duracell® Marks have materially damaged the value of the Duracell® Marks, caused significant damage to Duracell's business relations, and infringed on the Duracell® Marks.

164.     As a proximate result of Defendants' actions, Duracell has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

165.     Duracell is also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

**SEVENTH CAUSE OF ACTION**
**Uniform Deceptive Trade Practices Act**
**815 ILCS 510/2**

166.     Duracell re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

167.     Duracell is the owner of the Duracell® Marks.

168.     Duracell has registered the Duracell® Marks with the United States Patent and Trademark Office.

169.     The Duracell® Marks are valid and subsisting trademarks in full force and effect.

170.     Defendants have engaged and are engaging in a deceptive trade practice by, in the course of their business, creating a likelihood of confusion as to the source, sponsorship, approval, or certification of the OEM Batteries and/or Foreign Retail Batteries they are offering for sale to United States consumers.

171.     Specifically, Defendants' use of the Duracell® Marks is likely to lead Duracell's customers and potential customers to mistakenly conclude that Defendants' sale of OEM Batteries and/or Foreign Retail Batteries to United States consumers originates from or is sponsored, approval, or certified by Duracell.  In actuality, however, Duracell does not authorize OEM Batteries or Foreign Retail Batteries to be sold to United States consumers because neither

OEM Batteries nor Foreign Retail Batteries have the same customer benefits as U.S. Retail Batteries.

172.     As a proximate result of Defendants' actions, Duracell has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, good will, reputation, and profits in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Duracell respectfully prays for relief and judgment as follows:

A.     Judgment in favor of Duracell and against Defendants in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.     A preliminary and permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

  i)     Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Duracell OEM Batteries, Foreign Retail Batteries, and any repackaged or otherwise counterfeit Duracell products;

  ii)    Prohibiting the Enjoined Parties from using any of the Duracell® Marks in any manner, including advertising on the Internet;

  iii)   Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Duracell products as well as any products bearing any of the Duracell® Marks;

  iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Duracell® Marks including: invoices, correspondence with vendors and distributors, bank records,

account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)     Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Duracell's products, or any of the Duracell® Marks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Duracell® Marks which associate Duracell's products or the Duracell® Marks with the Enjoined Parties or websites used by the Enjoined Parties;

vii)     Requiring the Enjoined Parties to take all action to remove unauthorized Duracell® Marks from the Internet, including, but not limited to, the websites www.chicagoimportinc.net, www.groupon.com, and www.pricemaster.com.

C.     An order, pursuant to 15 U.S.C. § 1116(d) and the Court's inherent authority, directing seizure of all counterfeit goods evidence of Defendants' unlawful conduct;

D.     An award of attorneys' fees, costs, and expenses; and

E.     Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Duracell demands a trial by jury on all issues so triable.

Dated: December 21, 2017         Respectfully submitted,

        By: /s/ James T. Hultquist
            James T. Hultquist (6204320)
            REED SMITH LLP
            10 South Wacker Drive, 40th Floor
            Chicago, Illinois 60606
            Tel: (312) 207-1000 / Fax: (312) 207-6400
            jhultquist@reedsmith.com

And

Daren S. Garcia (*admitted pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
500 Grant Street, Suite 4900
Pittsburgh, PA  15219-2502
Tel: (412) 904-7700 / Fax: (412) 904-7817
dsgarcia@vorys.com

T. Blake Finney (*admitted pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
Great American Tower, Suite 3500
301 East Fourth Street
Cincinnati, OH 45202
Tel: (513) 723-4000 / Fax: (513) 852-7845
tbfinney@vorys.com

***Attorneys for Plaintiff Duracell U.S. Operations, Inc.***

# EXHIBIT A

# United States Patent Office

**793,273**
Registered July 27, 1965

## PRINCIPAL REGISTER
### Trademark

Ser. No. 198,063, filed July 17, 1964

## DURACELL

P. R. Mallory & Co., Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind.

For: MERCURY AND MANGANESE BATTERIES, OTHER THAN HEAVY DUTY STORAGE BAT-TERIES, in CLASS 21.
   First use on or about May 4, 1964; in commerce on or about May 14, 1964.

# EXHIBIT B

Int. Cl.: 9

Prior U.S. Cl.: 21

Reg. No. 1,039,589

**United States Patent Office**

Registered May 18, 1976

## TRADEMARK
### Principal Register



P. R. Mallory & Co. Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind. 46206

For: PRIMARY BATTERY CELLS, in CLASS 9 (U.S. CL. 21).

First use at least as early as September 1973; in commerce at least as early as September 1973.

The drawing is lined for the color, copper, and registrant makes claim to color as a feature of the mark.

Owner of Reg. Nos. 793,273, 838,685, and 974,286.

Ser. No. 57,211, filed July 9, 1975.

CHARLES R. FOWLER, Supervisory Examiner
RICHARD A. STRASER, Examiner

Int. Cl.: 9

Prior U.S. Cl.: 21

Reg. No. 1,039,589

**United States Patent and Trademark Office**

Registered May 18, 1976

10 Year Renewal

Renewal Term Begins May 18, 1996

## TRADEMARK
## PRINCIPAL REGISTER



DURANAME CORP. (DELAWARE COR-
PORATION)
C/O DURACELL INC.
BERKSHIRE INDUSTRIAL PARK
BETHEL, CT 06801, BY CHANGE OF
NAME AND ASSIGNMENT FROM P.
R. MALLORY & CO. INC. (DELA-
WARE CORPORATION) INDIANAPO-
LIS, IN

OWNER OF U.S. REG. NOS. 793,273,
838,685 AND 974,286.

THE DRAWING IS LINED FOR THE
COLOR, COPPER, AND REGISTRANT
MAKES CLAIM TO COLOR AS A FEA-
TURE OF THE MARK.

FOR: PRIMARY BATTERY CELLS, IN
CLASS 9 (U.S. CL. 21).

FIRST USE 9-0-1973; IN COMMERCE
9-0-1973.

SER. NO. 73-057,211, FILED 7-9-1975.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on July 30, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# EXHIBIT C

Int. Cl.: 9

Prior U.S. Cl.: 21

**United States Patent and Trademark Office**

Reg. No. 1,144,787
Registered Dec. 30, 1980

## TRADEMARK
### Principal Register



P. R. Mallory & Co. Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind. 46206

For: DRY CELL BATTERY, in CLASS 9 (U.S. Cl. 21).
First use Sep. 1973; in commerce Sep. 1973.
Owner of U.S. Reg. Nos. 838,685, 974,286 and 1,039,589.

The drawing is lined for the color metallic brown, embodying a copper tint. The dotted lines represent the entire configuration of the battery container and is not part of the mark, since, it serves only to show the mark's position and applicant makes no claim to the non-distinctive container configuration.

Ser. No. 77,730, filed Feb. 19, 1976.

G. T. GLYNN, Primary Examiner

BEST AVAILABLE COPY

Int. Cl.: 9

Prior U.S. Cl.: 21

**United States Patent and Trademark Office**

Reg. No. 1,144,787
Registered Dec. 30, 1980

## TRADEMARK
### Principal Register



P. R. Mallory & Co. Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind. 46206

    For: DRY CELL BATTERY, in CLASS 9 (U.S. Cl. 21).
    First use Sep. 1973; in commerce Sep. 1973.
    Owner of U.S. Reg. Nos. 838,685, 974,286 and 1,039,589.

    The drawing is lined for the color metallic brown, embodying a copper tint. The dotted lines represent the entire configuration of the battery container and is not part of the mark, since, it serves only to show the mark's position and applicant makes no claim to the non-distinctive container configuration.

    Ser. No. 77,730, filed Feb. 19, 1976.

G. T. GLYNN, Primary Examiner

# EXHIBIT D

Int. Cl.: 9

Prior U.S. Cl.: 21

## United States Patent and Trademark Office

Reg. No. 1,152,937
Registered May 5, 1981

## TRADEMARK
### Principal Register



P. R. Mallory & Co. Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind. 46206

For: BATTERIES, in CLASS 9 (U.S. Cl. 21).
First use Sep. 1973; in commerce Sep. 1973.
The drawing is lined for the color metallic brown,
embodying a copper tint with the solid black areas

representing the color black, and claim is made for
such colors. The mark consists of bands of copper
and black. The configuration of the battery is shown
by dotted lines and is not part of the mark. Applicant
makes no claim to the non-distinctive container
configuration.

Ser. No. 77,688, filed Feb. 19, 1976.

J. TINGLEY, Primary Examiner

Int. Cl.: 9

Prior U.S. Cl.: 21

## United States Patent and Trademark Office

Reg. No. 1,152,937
Registered May 5, 1981

## TRADEMARK
### Principal Register



P. R. Mallory & Co. Inc. (Delaware corporation)
3029 E. Washington St.
Indianapolis, Ind. 46206

For: BATTERIES, in CLASS 9 (U.S. Cl. 21).
First use Sep. 1973; in commerce Sep. 1973.
The drawing is lined for the color metallic brown, embodying a copper tint with the solid black areas representing the color black, and claim is made for such colors. The mark consists of bands of copper and black. The configuration of the battery is shown by dotted lines and is not part of the mark. Applicant makes no claim to the non-distinctive container configuration.

Ser. No. 77,688, filed Feb. 19, 1976.

J. TINGLEY, Primary Examiner

# EXHIBIT E

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

## United States Patent and Trademark Office

Reg. No. 3,082,777
Registered Apr. 18, 2006

### TRADEMARK
### PRINCIPAL REGISTER



THE GILLETTE COMPANY (DELAWARE COR-
PORATION)
PRUDENTIAL TOWER BUILDING, 40TH FLOOR
BOSTON, MA 02199

FOR: BATTERIES, IN CLASS 9 (U.S. CLS. 21, 23, 26,
36 AND 38).

FIRST USE 2-15-2004; IN COMMERCE 2-15-2004.

OWNER OF U.S. REG. NOS. 793,273, 1,417,363 AND
OTHERS.

SER. NO. 78-625,474, FILED 5-9-2005.

JOHN WILKE, EXAMINING ATTORNEY

# EXHIBIT F

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**United States Patent and Trademark Office**

Reg. No. 3,144,722
Registered Sep. 19, 2006

**TRADEMARK**
**PRINCIPAL REGISTER**

# DURACELL

THE GILLETTE COMPANY (DELAWARE COR-
PORATION)
PRUDENTIAL TOWER BUILDING, 40TH FLOOR
BOSTON, MA 02199

    FOR: BATTERIES, IN CLASS 9 (U.S. CLS. 21, 23, 26,
36 AND 38).

    FIRST USE 5-14-1964; IN COMMERCE 5-14-1964.

    THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

    OWNER OF U.S. REG. NOS. 793,273, 2,936,877 AND
OTHERS.

    SER. NO. 78-624,053, FILED 5-5-2005.

ELIZABETH J. WINTER, EXAMINING ATTORNEY